UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

JASON LIGGINS,

                                    Plaintiff,

          -v.-                                                      9:06-CV-1460
                                                                    (LEK/GHL)
LT. GRIFFO, Watch Commander; SGT. VANPELT, Shift
Supervisor; GONDAK, Deputy; CLARK, Deputy;
HELEN HEIM, Watch Commander/Grievance Coordinator;
DANIEL G. MIDDAUGH, Sheriff; and EDNA HOBBIE,
Law Librarian,

                                    Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

APPEARANCES:                                        OF COUNSEL:

JASON LIGGINS, 07-B-1475
  Plaintiff, *Pro Se*
Gouverneur Correctional Facility
Scotch Settlement Road
P.O. Box 370
Gouverneur, NY 13642

GORMAN, WASZKIEWICZ LAW FIRM              BARTLE J. GORMAN, ESQ.
  Counsel for Defendants
1508 Genesee Street
Utica, NY 13502

LAWRENCE E. KAHN
U.S. District Judge

## DECISION AND ORDER

        Plaintiff Jason Liggins filed this *pro se* prisoner civil rights action pursuant to 42 U.S.C. §

1983.  Generally, Plaintiff alleges that employees of the Oneida County Jail – Lt. Griffo, Sgt.

VanPelt, Gondak, Clark, Helen Heim, Daniel G. Middaugh, and Edna Hobbie ("Defendants") –

violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments when, between

October 2006 and December 2006, they failed to protect Plaintiff from a known harm, denied

Plaintiff medical attention in deliberate indifference to his serious medical needs, failed to address

Plaintiff's grievances, and denied Plaintiff access to the courts. See generally Amended Complaint

(Dkt. No. 34). Currently pending before the Court is Plaintiff's Motion for summary judgment

pursuant to Fed. R. Civ. P. 56. Dkt. No. 40. Defendants have filed a response to Plaintiff's motion

and a cross-Motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 44. Plaintiff

duly filed his response and reply papers. Dkt. No. 47. For the reasons that follow, Defendants'

cross-Motion for summary judgment is granted, and that Plaintiff's Motion for summary judgment

is denied as moot.

I.    **SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT**

    A.    **Alleged facts**

Liberally construed, Plaintiff's Amended Complaint ("A.C.") alleges the following facts:

In October 2006, Plaintiff was incarcerated at the Oneida County Jail as a pre-trial detainee.

A.C. at 4 (Dkt. No. 34). Plaintiff was housed under administrative protective custody in Baker

Block Left. Id. Plaintiff was on administrative protective custody status because he had been

labeled a "snitch" and because his father was a Sergeant with the Utica Police Department and a

former narcotics detective. Id. On October 12, 2006, after Plaintiff "mailed out a civil complaint,"

he was transferred to Baker Block Right. Id. Plaintiff objected to the transfer because disciplinary

inmates were housed in Baker Block Right and Plaintiff was "on a Keep Separate list from inmates

housed on that side." Id.

On October 13, 2006, Defendant Gondak allowed disciplinary inmates and inmates on

Plaintiff's "keep separate listing" to pass through the shower area while Plaintiff was taking a

shower. Id. at 5. Plaintiff "wrote out an Inmate Complaint form" about the incident when he

returned to his cell.  Id. at 5.  On October 14, 2006, Plaintiff met with Defendants Griffo and

Van Pelt concerning his complaint.  Id. at 5-6.  Plaintiff asked to be moved back to Baker Block

Left.  Id. at 6.  Plaintiff's complaint and his request to be moved were "disregarded."  Id.  Defendant

Griffo told Plaintiff "It doesn't matter what side you are on."  Id.

On October 21, 2006, while Plaintiff was showering under the supervision of Defendant

Clark, an inmate assaulted Plaintiff, "causing immediate pain to [Plaintiff's] jaw and left knee

followed by pain in [his] lower back."  Id.  The incident was logged into the logbook, but no

disciplinary action was taken.  Id.  Defendant Clark denied Plaintiff medical treatment following the

incident.  Id. at 6-7.  Plaintiff was not seen by the medical staff until approximately two and one half

weeks after the incident.  Id. at 7.  On November 22, 2006, Plaintiff submitted an inmate complaint

regarding the shower incident to Deputy Brothers for Defendant Griffo's attention.  Id.  After

receiving the complaint, Defendant Griffo stated "I don't want it."  Id.  Defendant Griffo never

responded to the complaint.  Id.  On November 25, 2006, Plaintiff also submitted complaints to

Defendants Middaugh and Heim "by way of U.S. mail" but received no response from either

Defendant.  Id.

Plaintiff requested legal materials from Defendant Hobbie for use in preparing his civil court

actions but his requests were "disregarded . . . despite the fact that [Plaintiff] wrote numerous

inmate complaint forms which were also disregarded."  Id. at 8.

**B.    Plaintiff's claims**

In construing Plaintiff's claims, the Court has afforded Plaintiff's Amended Complaint the

liberal construction that all pleadings must be afforded, under Fed. R. Civ. P. 8.  See Fed. R. Civ. P.

8(f) ("All pleadings shall be so construed as to do substantial justice.").  In addition, as required for

*pro se* litigants, the Court has construed Plaintiff's pleadings with even more liberality than is required under Fed. R. Civ. P. 8.  See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") (internal quotation marks and citation omitted).

Plaintiff alleges that the Defendant jail deputies and supervisors acted with deliberate indifference to his safety in violation of the Eighth and Fourteenth Amendments when they were made aware of a substantial risk to Plaintiff's safety and failed to take reasonable action to protect Plaintiff from harm.  Dkt. No. 34 (First and Second Causes of Action).  Plaintiff also claims that Defendant Clark denied Plaintiff medical attention in deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments (Third Cause of Action). Additionally, Plaintiff claims that Defendants interfered with his right to file grievances in violation of the First and Fourteenth Amendments (Fourth Cause of Action), and denied him access to the law library and legal assistance in violation of the First, Sixth, and Fourteenth Amendments (Fifth Cause of Action).  Construing Plaintiff's Amended Complaint liberally, Plaintiff also appears to allege that Defendants transferred him to a different cell block in retaliation for filing a civil complaint.  A.C. at 4 (Dkt. No. 34).

## II.    LEGAL STANDARD

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty

4

Lobby, Inc., 477 U.S. 242, 247 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line,

Inc., 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it

"might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248; see also

Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (citing Anderson).  A material fact

is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson, 477 U.S. at 248.  Though pro se plaintiffs are entitled to special

latitude when defending against summary judgment motions, they must establish more than mere

"metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986); but see Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir.

1999) (noting obligation of court to consider whether pro se plaintiff understood nature of summary

judgment process).

When summary judgment is sought, the moving party bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be decided with respect to any

essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.

Anderson, 477 U.S. at 250 n.4; Security Ins., 391 F.3d at 83.  In the event this initial burden is met,

the opposing party must show, through affidavits or otherwise, that there is a material issue of fact

for trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw

all inferences from the facts, in a light most favorable to the nonmoving party.  Jeffreys, 426 F.3d at

553; Wright v. Coughlin, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate

where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-

movant's] favor."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted);

see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## III.    ANALYSIS

### A.    Defendants' Cross-Motion for Summary Judgment

In support of their cross-Motion for summary judgment, Defendants assert the following arguments: (1) Plaintiff has failed to exhaust his administrative remedies with respect to his claim that he was denied access to the courts; (2) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; (3) Defendants were not deliberately indifferent to Plaintiff's safety and security; and (4) Defendants are entitled to qualified immunity.  Dfts' Mem. of Law (Dkt. No. 44).

### 1.    Exhaustion of administrative remedies

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Defendants contend that Plaintiff did not exhaust his administrative remedies with respect to his claim that he was denied access to the courts by being denied appropriate legal services.  Dfts' Mem. of Law at 9 (Dkt. No. 55).  The Defendants have submitted the Affidavit of Defendant Helen Heim, the Grievance Coordinator for the Oneida County Jail.  Dkt. No., Att. 8.  Defendant Heim

indicates that the Oneida County Jail has in place a grievance procedure and that the grievance procedure is set forth in the Inmate Handbook.  Id. at 1-2.  The grievance procedure mirrors New York state minimum standards for local grievance programs set out at 9 N.Y.C.R.R. Part 7032.  See Heim Aff., Ex. A.  The Oneida County Jail policy provides that "[a]ny inmate complaint, which [can] not be successfully resolved, utilizing the informal process will at the inmates' request, become[ ] a formal grievance."  Heim Aff. at 4.  A grievance is defined, in relevant part, to include "a written inmate complaint concerning either written or unwritten facility policies, procedures, rules practices, programs or the action or inaction of any person within the facility."  Id., n.1; see also 9 N.Y.C.R.R. § 7032.2(a).  Inmates are to be afforded access to grievance forms, and upon the filing of an inmate grievance, an investigation is to be conducted and a written determination issued within five business days of receipt of a grievance.  Heim Aff. at 5; see also 9 N.Y.C.R.R. § 7032.4. An internal appeal mechanism is set forth, as well as procedures for an external appeal to the Commission of Correction.  Heim Aff. at 5; see also 9 N.Y.C.R.R. §§ 7032.4(j), 7032.5.

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  Rodriguez v. Hahn, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  See Hemphill v. New York, 380 F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  Hemphill, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants

may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." Id. (citations and internal quotations omitted).

Clearly, administrative remedies were available to Plaintiff at the Oneida County Jail. See Heim Aff. (Dkt. No. 44, Att. 8). In keeping with those available remedies, Plaintiff submitted an Informal Inmate Complaint Form dated October 10, 2006 alleging that he was being denied access to the courts because he was denied his right of access to the law library or legal assistance on a "consistent basis." Pl's Reply at 7 (Dkt. No. 47, Att. 1). In response to the Informal Complaint, the housing unit officer responded "unable to resolve at this level." Id. Plaintiff does not indicate that he filed a formal grievance after the informal grievance process was unsuccessful nor does he provide a copy of any formal grievance form relating to the issues of informally grieved. Moreover, Defendant Heim, the Grievance Coordinator at the Oneida County Jail states that Plaintiff "did not exhaust the grievance procedure on any of the grievable issues raised in his complaint in this law suit." Heim Aff. at 1. While Plaintiff does allege in his Amended Complaint that he "wrote numerous inmate complaint forms" regarding these access to the courts issues which were "disregarded," see A.C. at 8 (Dkt. No. 34), these conclusory allegations without more are insufficient to overcome Defendant Heims' affidavit that Plaintiff filed no grievance. See Tackman

8

v. Goord, No. 99-CV-0438A, 2005 WL 2347111, at *31 (W.D.N.Y. Sept. 26, 2005) (conclusory and self-serving statements regarding attempts to file grievances are inadequate to defeat a motion for summary judgment). Plaintiff has provided no evidence that Defendants should be estopped from raising failure to exhaust these claims, nor has he set forth any special circumstances which would excuse his non-exhaustion.

Accordingly, the Court finds that no reasonable factfinder could conclude that Plaintiff exhausted his administrative remedies with respect to his the access to the courts claims set forth in his Amended Complaint and Plaintiff's access to the courts claim is therefore dismissed on this threshold, procedural basis.

### 2.    Deliberate indifference to safety and security

Because Plaintiff is a pre-trial detainee, the proper analysis of Plaintiff's claim for failure to protect is under the Due Process Clause of the Fourteenth Amendment. Lareau v. Manson, 651 F.2d 96, 102 (2d Cir. 1981) (constitutional standard for substantive rights of pre-trial detainees is Fourteenth Amendment due process) (cited in Bowman v. Campbell, 850 F.Supp. 144, 147 (N.D.N.Y.1994)); see also Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir.1973) (Eighth Amendment does not apply prior to conviction and therefore is not applicable to pre-trial detainees). Because a person "lawfully committed to pretrial detention has not been adjudged guilty of any crime," pre-trial detainees "may not be punished in any manner-neither cruelly and unusually nor otherwise." Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir.2003) (citing Bell v. Wolfish, 441 U.S. 520, 535-36 (1979)). Nonetheless, "[t]he standard for analyzing a pretrial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." Bourdon v. Roney, No. 9:99-CV-0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar. 6, 2003) (citing Weyant v. Okst, 101 F.3d 845, 856 (2d

Cir.1996)); see also Walton v. Breeyear, No. 9:05-CV-0194, 2007 WL 446010, at *8 n. 16

(N.D.N.Y. Feb. 8, 2007) (noting that Fourteenth Amendment protections for pretrial detainees

provide parallel "protection" of those Eighth Amendment protections for sentenced prisoners).  Thus,

the Court will analyze Plaintiff's Fourteenth Amendment due process claim under the Eighth

Amendment standard.

To succeed on a claim for failure to protect under the Eighth Amendment standard, a plaintiff

must prove in objective terms that an alleged deprivation is "sufficiently serious" such that it denied

him or her the "minimal civilized measure of life's necessities."  Dawes v. Walker, 239 F.3d 489,

493-94 (2nd Cir. 2001) (internal quotations and citations omitted), *overruled on other grounds*,

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  Specifically, as noted above, in situations

where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated

under conditions posing a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 834-37

(1994); Dawes, 239 F.3d at 493; Matthews v. Armitage, 36 F. Supp.2d 121, 124-25 (N.D.N.Y.

1999).

To satisfy the subjective component, a plaintiff must show that prison officials actually knew

of, but disregarded, an excessive risk to his or her health and safety – "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  Farmer, 511 U.S. at 837; Matthews, 36 F. Supp.2d at 124-25.

Further, a supervisor can be held liable when he or she has actual or constructive notice of

unconstitutional practices but similarly acted with gross negligence or deliberate indifference in

failing to act.  See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).  "Such a supervisor

may not escape the consequences of his or her failure to act by pleading the doctrine of qualified

immunity." <u>Fossett v. Morris</u>, No. 86 Civ. 3800, 1991 WL 67093, at *3 (S.D.N.Y. Apr. 22, 1991).

Here, Plaintiff alleges that Defendants Griffo, VanPelt, Gondak, Clark, and Middaugh

violated his Eighth and Fourteenth Amendment rights by failing to protect him from an attack by

another inmate after they were warned that Plaintiff's transfer to Baker Block Right would put him in

danger.  A.C. (Dkt. No. 34).  Plaintiff alleges that he was in protective custody on Baker Block Left

because he had been labeled a "snitch" and because his father was a member of the Utica Police

Department and a former narcotics detective.  <u>Id.</u>

In objective terms, Defendants have produced evidence that confinement in Baker Block Left

and Baker Block Right provided identical forms of confinement - namely, prisoners are housed on

each Block in their cells for 23 hours a day and outside their cell for one hour a day during which

time they are constantly supervised.  <u>See</u> Griffo Aff. at 2 (Dkt. No. 44, Att. 4); VanPelt Aff. at 1-2

(Dkt. No. 44, Att. 5); Clark Aff. at 2 (Dkt. No. 44, Att. 7); <u>see also</u> Reply at 28 (Dkt. No. 27, Att. 1)

(shift supervisor's response to Plaintiff's October 17, 2006 Informal Inmate Complaint).  Defendants

also aver that Plaintiff was moved from Baker Block Left, where an inmate on Plaintiff's "keep

separate" list was housed, to Baker Block Right, where no inmates on Plaintiff's "keep separate" list

were housed.  Griffo Aff. at 2; VanPelt Aff. at 2; Gondek Aff. at 2-3 (Dkt. No. 44, Att. 6).

Defendants also aver that both protective custody inmates, such as Plaintiff, or inmates under

disciplinary confinement could be housed on either Baker Block Left or Baker Block Right.  Griffo

Aff. at 2; VanPelt Aff. at 2.  Aside from Baker Block Left and Baker Block Right, there is no other

housing available at the Oneida County Jail for inmates "who are under 23 and 1 restriction and

constant supervision."  VanPelt Aff. at 2.  Apart from his conclusory statements that he would be in

danger if housed in Baker Block Right, Plaintiff has produced no evidence that being housed on

Baker Block Right presented any greater danger to him than being housed on Baker Block Left.

Since the level and conditions of confinement on the Left and Right Blocks were identical, no

reasonable juror could conclude that when Plaintiff was moved to Baker Block Right, he was

incarcerated under conditions posing a substantial risk of serious harm. In fact, to the contrary, since

Plaintiff was moved away from the only inmate on his "keep separate" list, it would be reasonable to

conclude that Plaintiff was actually placed in safer confinement when he was moved to Baker Block

Right.

Subjectively, Plaintiff alleges that Defendants were on notice that his safety would be

threatened if placed on Baker Block Right since he had been labeled a "snitch" and was the son of a

Utica Police Department Detective. As more fully discussed above, Defendants state, however, that

in either Block, Plaintiff was in his cell for 23 hours a day and under constant supervision for the 1

hour a day that he was let out of his cell. Accordingly, no reasonable fact-finder could conclude that

being housed in Baker Block Left afforded Plaintiff any greater protection than being housed in

Baker Block Right. Plaintiff also alleges that on October 13, 2006, after being transferred to Baker

Block Right, disciplinary inmates and inmates on his "keep separate" list were allowed to pass by

him while he was in the shower. A.C. at 5 ("Dkt. No. 34"). In response, Defendant Gondek admits

that recreation inmates were allowed to pass by Plaintiff while he was showering on October 13,

2006, but states that Plaintiff was under his supervision while taking a shower and the recreation

inmates were under the supervision of the recreation officer. Gondek Aff. at 1-2 (Dkt. No. 44, Att.

6). Gondek also states that "[n]o incident took place on October 13, 2006." Id. Plaintiff does not

dispute that he was unharmed by passing by of the other inmates. In fact, Plaintiff filed an Informal

Complaint regarding this event and did not indicate that he was harmed in any manner when these

inmates passed by him.  Reply at 27 (Dkt. No. 47, Att. 1).  Plaintiff asserts that the October 13, 2006

incident gave Defendants notice that he was actually in danger on Baker Block Right.  In his

affidavit, Defendant Griffo states that there "was no history of bad blood between" Plaintiff and the

inmate that attacked him on November 21, 2006; both inmates were under 23 and 1 supervision at

the time; and both inmates were "under different supervision when the fight broke out suddenly and

without warning."  Griffo Aff. at 2-3 (Dkt. No. 44, Att. 4).  In his affidavit, Defendant Clark states

that on November 21, 2006, Plaintiff was taking a shower under his supervision while other inmates

housed on Baker Block Right returned from recreation under the supervision of the recreation officer.

Clark Aff. at 2 (Dkt. No. 44, Att. 8).  Clark states that "[o]ne of these returning inmates, Jonathan

Baker, suddenly went around me and turned into the shower grabbing [Plaintiff] and began to fight."

Id.  Clark states that there "was no warning of this sudden act and no indication of any prior issues

between these two inmates."  Id. at 3-4.

      Plaintiff has failed to demonstrate, in objective terms, that he was incarcerated under

conditions posing a substantial risk of serious harm.  He has also failed to satisfy the subjective

component that the Defendants actually knew of but disregarded an excessive risk to his safety.

      Accordingly, Defendants' cross-Motion for summary judgment is granted as to Plaintiff's

claim that Defendants were deliberately indifferent to his safety and those claims are dismissed in

their entirety.

      **3.**    **Deliberate indifference to serious medical needs**

      Plaintiff alleges that Defendant Clark was deliberately indifferent to Plaintiff's serious

medical needs when he denied Plaintiff medical attention after Plaintiff was assaulted by another

inmate on November 21, 2006.  A.C. at 6-7 (Dkt. No. 34).  "While the Eighth Amendment protects

incarcerated prisoners from cruel and unusual punishment in the form of inadequate medical care, the

Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate

medical care by the state."[1]  Richardson v. Nassau County, 277 F. Supp.2d 196, 201 (E.D.N.Y. 2003)

(citing Bewry v. Hopkins, 125 F.3d 843, 1997 WL 589683, at *1 (2d Cir.1997); McKenna v. Wright,

No. 01 Civ. 6571, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002)); see also Cuoco v. Moritsugu,

222 F. 3d 99, 106 (2d Cir. 2000) (applying the Due Process Clause of the Fifth Amendment to a

deliberate indifference claim brought by a federal pre-trial detainee, and noting that "[w]e have often

applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions

under the Due Process Clause of the Fourteenth Amendment.") (citations omitted).  Because Plaintiff

states in his Amended Complaint that he was a pre-trial detainee at all relevant times, he cannot

assert an action for deliberate indifference under the Eighth Amendment. See Richardson, 277 F.

Supp. 2d 196.  However, a detainee's Fourteenth Amendment due process rights concerning the

conditions of his confinement are "at least as great as the Eighth Amendment protections available to

a convicted prisoner."  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244 (1983)

(citations omitted).  "[T]he official custodian of a pretrial detainee may be found liable for violating

the detainee's due process rights if the official denied treatment needed to remedy a serious medical

condition *and* did so because of his deliberate indifference to that need." Weyant, 101 F.3d at 856

(citation omitted) (emphasis added).  Thus, the standard for analyzing a pre-trial detainee's

Fourteenth Amendment claim for inadequate medical care is the same as the Eighth amendment

standard. See Weyant, 101 F.3d at 856.

---

[1]  Pretrial detainees may not be subjected to conditions and restrictions that amount to "punishment" without due process of law.  Bell, 441 U.S. 520; Weyant, 101 F.3d at 856.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'. . . .   [Second,] a prison official must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834.  "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety . . . ." Id.  Generally, to prevail on a claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

### a.    Serious medical condition

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], accord, Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); Chance, 143 F.3d at 702.  A serious medical condition exists where "'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (citing Chance, 143 F.3d at 702) (other citation omitted).  Since medical conditions vary in severity, "a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." Harrison, 219 F.3d at 136-37.  "[S]ubjective complaints of pain are not sufficient to satisfy [the serious medical need] standard." Thomas v. Nassau County Corrections Center, 288 F. Supp.2d 333, 338 (E.D.N.Y. 2003) (citations omitted).

Here, Plaintiff alleges that, immediately following the November 21, 2006 incident, he

15

suffered from pain in his jaw and left knee.  A.C. at 7 (Dkt. No. 34).  Plaintiff also alleges that about

two days after the incident, he developed back pain which persisted up until the time he filed this

action.  Id.

In support of their cross-Motion for summary judgment, Defendants contend that there is no

evidence of serious medical need.  Mem. of Law at 11 (Dkt. No. 44, Att. 14).  Defendants have

submitted portions of Plaintiff's medical records which indicate that on December 7, 2006, Plaintiff

was complaining of lower back pain; Plaintiff was prescribed Tylenol, to be taken three times a day.

Gorman Decl. at 9 (Dkt. No. 44, Att. 3).  Defendants have also submitted copies of three requests for

medical attention submitted by Plaintiff dated November 21, 2006, November 25, 2006, and

November 27, 2006 wherein Plaintiff sought treatment for hemorrhoids and an arm rash, and

requested tests and shots wholly unrelated to the alleged injuries suffered in the November 21, 2006

incident.  Gorman Decl. at 5-7.  In these medical requests, Plaintiff made no mention whatsoever of

jaw, knee, or back pain.  Id.

On the issue of serious medical need, Plaintiff essentially relies upon his verified Amended

Complaint.  Aside from Plaintiff's conclusory allegations, there is nothing in the record to support a

finding that Plaintiff suffered from a serious medical need.  Clearly lacking from the record is any

indication that the pain Plaintiff was suffering was severe, excruciating, or debilitating.  Plaintiff's

subjective complaints of pain, without more, are not sufficient to establish serious medical need.  See

Thomas, 288 F. Supp.2d at 338 (citation omitted) (subjective complaints of pain are not sufficient to

satisfy serious medical need standard).  Moreover, a review of the medical records submitted by

Defendants demonstrates that when Plaintiff was seen for back pain on December 7, 2006 -

approximately two weeks after his assault - he was prescribed moderate pain medication (Tylenol).

Gorman Decl. at 8 (Dkt. No. 44, Att. 3).  There is nothing in the record to indicate that the Tylenol

did not alleviate Plaintiff's pain; Plaintiff does not submit evidence of requests for follow-up medical

care after he was prescribed Tylenol.  Moreover, after examining Plaintiff on December 7, 2006, the

examining physician noted that Plaintiff indicated that "pain to jaw & L knee has subsided - lower

back pain more of a strain than a pain." Id.  While Plaintiff did submit an informal inmate complaint

dated December 4, 2006 wherein he claims to have submitted "6 request [sic] to medical to be seen

in regards to pain that [he feels] in [his] lower back, jaw and left knee which has been occurring

since 11-21-06 when [he] was assaulted by another inmate.  Pain has been disregarded denying me

adequate medical attention", see Id. at 9, Plaintiff has not submitted copies of those six requests.

Other than Plaintiff's conclusory allegations that he suffered from back, jaw, or knee pain, there is

nothing to support Plaintiff's claim that he suffered from a serious medical condition.

 After reviewing the relevant case law, the Court is unable to find that Plaintiff has alleged

facts plausibly suggesting a serious medical need under the Eighth Amendment.  See, e.g., Benitez v.

Pecenco, No. 92 Civ. 7670, 1995 WL 444352, at *3 (S.D.N.Y. Jul. 27, 1995) (intermittent

complaints of back pain do not constitute serious medical need); Espinal v. Coughlin, No. 98 CIV.

2579, 2002 WL 10450 (S.D.N.Y. Jan. 3, 2002) (ruptured ligament in the knee does not constitute a

serious medical condition for purposes of the Eighth Amendment); Smith v. Connecticut Dept. of

Corrections, Civ. No. 3:05CV960, 2008 WL 918535, at *28 (D.Conn. Mar. 31, 2008) (not all

medical conditions constitute serious medical conditions) (citing Jones v. Lewis, 874 F.2d 1125 (6th

Cir. 1989) (broken jaw is not serious medical condition), cert denied, 506 U.S. 841 (1992)).

  **b.**  **Deliberate indifference**

 Even if the Court were to conclude that Plaintiff had set forth a sufficiently serious medical

need, Plaintiff fails to show that Defendant Clark was deliberately indifferent to his medical needs. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Deliberate indifference is a state of mind akin to *criminal recklessness*.[2] "Further, a delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm." Thomas, 288 F. Supp.2d at 339 (citing Chance, 143 F. 3d at 703). "The Second Circuit has 'reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years." Thomas, 288 F. Supp.2d at 339 (citing Espinal v. Coughlin, 98 Civ. 2579, 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3, 2002)). Even if a prisoner is able to establish delay, in order to establish deliberate indifference, he must also show that his condition became worse or deteriorated as a result of the delay. Thomas, 288 F. Supp.2d at 339.

Plaintiff alleges that Defendant Clark denied him the right to be seen by the medical department for his pain. A.C. at 6-7 (Dkt. No. 34). Plaintiff further claims that he was not seen by the medical department regarding his injuries suffered during the assault until two and one-half weeks after the alleged assault. Id. at 7. Defendant Clark, on the other hand, claims that Plaintiff

---

[2] Farmer, 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted].

indicated that he did not need medical treatment as a result of the incident.  Dkt. No. 44, Att. 7 at 6

(log entry indicating that Defendant Clark asked Plaintiff if he wanted "medical" but Plaintiff

"refused"); see also Dkt. No. 44, Att. 7 at 9 (Incident Report dated November 21, 2006 wherein

Supervisor Sgt. Ken Shanley noted that "no medical attention needed" for inmate Liggins).  In his

answer to an interrogatory, when asked whether a nurse came to examine Plaintiff after the assault,

Defendant Clark stated: "In the absence of obvious physical injury an inmate is asked if medical

assistance is desired. [Plaintiff was] asked and [he] denied the need for medical treatment.  See log

entry 385 @ 1432 hours."  Dkt. No. 44, Att. 11 at 2-3.  While Plaintiff claims that he submitted "6

request [sic] to medical to be seen in regards to pain that [he feels] in [his] lower back, jaw and left

knee which has been occurring since 11-21-06 when [he] was assaulted by another inmate.  Pain has

been disregarded denying me adequate medical attention", see Dkt. No. 44, Att. 4 at 9, such requests

made to the medical department are not relevant to Plaintiff's allegations that **Defendant Clark** was

deliberately indifferent to Plaintiff's serious medical needs.  To the extent that Plaintiff is attempting

to claim that staff of the medical department were deliberately indifferent to his serious medical

needs, this claim would fail since Plaintiff does not name those medical department employees as

defendants in this action.

Based on the record before the Court, no reasonable fact finder could conclude that

Defendant Clark was deliberately indifferent to Plaintiff's medical needs.  Plaintiff does not allege

that he manifested symptoms which would indicate that he warranted immediate or urgent medical

attention.  Plaintiff has not alleged that Defendant Clark denied Plaintiff access to medical care as a

form of punishment or to make Plaintiff suffer.  Moreover, even if Plaintiff could establish that

Defendant Clark was responsible for unreasonably delaying Plaintiff's medical care, Plaintiff has

failed to demonstrate that a delay in treatment of slightly over two weeks was inordinate given his

medical condition or that any delay resulted in a deterioration or worsening of any of Plaintiff's

alleged medical problems.  In fact, by the time Plaintiff was examined by a physician on December 7,

2006, Plaintiff stated that the pain in his jaw and knee had subsided.  Gorman Decl. at 8 (Dkt. No.

44, Att. 3).  Finally, while Plaintiff submitted three other requests for medical attention during the

two week period in question, he did not mention jaw, knee or back pain in those requests.  Id. at 5-7.

It would be difficult for a reasonable factfinder to conclude that he was suffering from a serious or

life-threatening medical need.

Accordingly, Defendants' cross-Motion for summary judgment is granted as to Plaintiff's

medical indifference claims and the medical indifference claims are dismissed.

### 4.    Denial of right to redress grievances

Plaintiff alleges that Defendants interfered with his right to file grievances at Oneida County

Jail.  A.C. at 9 (Dkt. No. 34).

> "[T]he law is clear that plaintiff has no constitutional right to have his grievances
> processed at all, or if processed, to have the procedure done properly.  Torres v.
> Mazzuca, 246 F.Supp.2d 334, 342 (S.D.N.Y. 2003).  A violation of the inmate
> grievance procedures does *not* give rise to a claim under section 1983.  Cancel v.
> Goord, No. 00-Civ.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713 (S.D.N.Y.
> Mar. 29, 2001).

Avent v. Doe, No. 9:05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008).  "Prison

grievance procedures do not confer any substantive rights upon an inmate requiring the procedural

protections envisioned by the Fourteenth Amendment."  Torres, 246 F. Supp.2d at 342 (citing

Mahotep v. DeLuca, 3 F. Supp.2d 385, 390 n.3 (W.D.N.Y. 1998)).  Therefore, to the extent that

Plaintiff alleges a due process violation for interference with the filing of grievances, he fails to state

20

a claim under Section 1983.

Additionally, Plaintiff fails to state a claim for denial of access to the courts under the First Amendment.  Failure to process a grievance does not violate an inmate's First Amendment rights to petition the government for redress or to access the courts.  <u>Cancel</u>, 2001 WL 303713, at *3-4; <u>see also</u> <u>Johnson v. Barney</u>, No. 04 Civ. 10204, 2007 WL 900977, 1 (S.D.N.Y. Mar. 22, 2007) ("While a prisoner's right to meaningful access to the courts is clearly protected by the First Amendment right to petition the government, the same cannot be said for a prison grievance system.") (internal quotation omitted).  "Even if an inmate's claims are ignored or otherwise stifled by an official grievance proceeding, the inmate still has the right to petition the government directly for redress of his claims."  <u>Johnson v. Barney</u>, No. 04 Civ. 10204, 2006 WL 3714442, at *2 n.4 (S.D.N.Y. Dec. 13, 2006).

Accordingly, Defendants' cross-Motion for summary judgment is granted with respect to Plaintiff's claims regarding interference with or denial of the right to file grievances and those claims are dismissed for failure to state a claim under Section 1983.

### 5.    Denial of access to the courts

Although the Court has already found that Plaintiff did not exhaust his administrative remedies as to this claim, a closer analysis reveals that, even if he had done so, Plaintiff still fails to state a claim for denial of access to the courts.  It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."  <u>See</u> U.S. CONST. Amend I.  This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights."  <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), *modified on other grounds*,

Lewis v. Casey, 518 U.S. 343, 350 (1996); see also Bourdon v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (citations omitted); Liggins v. Parker, 9:04-CV-966, 2007 WL 2815630, at *9 (N.D.N.Y. Sep. 25, 2007) (pre-trial detainee must demonstrate actual injury to establish a violation of his access to the courts). "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" Collins v. Goord, 438 F. Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. Lewis, 518 U.S. at 353; Renelique v. Duncan, 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007). It is worth noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'" Collins, 438 F. Supp.2d at 415-16 (quoting Lewis, 518 U.S. at 355). "'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'" Id.

In this case, Plaintiff claims that he was denied adequate access to the court, to the law library, and to adequate assistance from persons trained in the law because Defendant Hobbie "*et al.*" disregarded his requests "for case law, books, rules of the civil Federal Court and information pertaining to summary judgment etc. [sic]" that he needed to prepare his civil actions. A.C. at 8 (Dkt. No. 34). Plaintiff fails to state a claim for denial of access to the courts. Plaintiff does not allege any actual injury as a result of Defendants' alleged conduct. In fact, while Plaintiff alleges that

he was denied "information pertaining to summary judgment," Plaintiff was able to timely file a

motion for summary judgment in this action, and prepared a timely response to Defendants' cross-

Motion for summary judgment.  Moreover, Defendant Hobbie has, by Affidavit, provided copies of

Plaintiff's request slips for legal materials and a listing of legal materials and notary services

provided to Plaintiff while he was an inmate at the Oneida County Jail.  Hobbie Aff. (Dkt. No. 44,

Att. 10).  Plaintiff does not refute receiving such materials and services, which were extensive.

Accordingly, Plaintiff fails to state a claim for a constitutional violation of denial of access to the

courts, and Defendants' cross-Motion for summary judgment should be granted in this respect.

      **6.**    **Retaliation**

     In addressing a motion for summary judgment, the legal sufficiency of a *pro se* plaintiff's

complaint must be construed "broadly."  See Bost v. Mann, No. 9:04-CV-0246, 2007 WL 527320, at

\*12 (N.D.N.Y. Feb. 20, 2007) (citation omitted).  With that edict in mind, Plaintiff's Amended

Complaint could be regarded as alleging a claim of retaliation, based upon his allegation that after he

mailed out a civil complaint, Defendants "removed [Plaintiff] from B-left where PC and PCA

inmates are housed and placed [him] on B-right where disciplinary inmates are housed and known to

throw urin [sic] and fecis [sic] on inmates even though [Plaintiff] stated that '[he was] on keep

separate list from inmates housed on that side.'" A.C. at 4 (Dkt. No. 34).

     In order to establish a claim of retaliation for the exercise of a constitutional right, a plaintiff

must show first, that he engaged in constitutionally protected conduct, and second, that the conduct

was a substantial motivating factor for ***adverse action*** taken against him by defendants.  Bennett v.

Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citing Gayle v. Gonyea, 313 F.3d 677 (2d Cir. 2002);

Hendricks v. Coughlin, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of

retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. Id. (citing Dawes, 239 F.3d at 491. Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. Bennett, 343 F.3d at 137.

The Second Circuit has defined "adverse action" as "'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. Id. In this case, Plaintiff meets the first prong of the test for retaliation. Plaintiff alleges that he filed a civil complaint. There is no dispute that the filing of a lawsuit is a constitutionally protected activity. Baskerville v. Blot, 224 F.Supp.2d 723, 731 (S.D.N.Y. 2002) (citing Bounds v. Smith, 430 U.S. 817, 821-32 (1977); Amaker v. Goord, No. 98 Civ. 3634, 2002 WL 523371, *14 (S.D.N.Y. March 29, 2002)).

After filing the civil complaint, Plaintiff alleges that he suffered retaliatory action by prison officials when he was transferred to a new prison block. Retaliatory transfer of a prisoner's housing constitutes an adverse action. See Haymes v. Montanye, 547 F.2d 188, 191 (2d Cir.1976), *cert. denied,* 431 U.S. 967 (1977) (Retaliatory transfer of a prisoner's housing has long been prohibited in this Circuit). However,

> [a] defendant is entitled to summary judgment on a retaliation claim "if the
> undisputed facts demonstrate that the challenged action clearly would have been taken
> on a valid basis alone." Davidson v. Chestnut, 193 F.3d 144, 149 (2d Cir. 1999). "A
> finding of sufficient permissible reasons to justify state action is readily drawn in the
> context of prison administration," for two reasons. Graham [v. Henderson], 89 F.3d

[75,] 79 [2d Cir. 1996]. First, "[r]etalitation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." Id. Second, "we have been cautioned to recognize that prison officials have broad administrative authority." Id.

Miller v. Loughren, 258 F.Supp.2d 61, 62 (N.D.N.Y. 2003).

The record contains the affidavit and deposition testimony of Defendant Griffo asserting that Plaintiff was moved from Baker Block Left to Baker Block Right for legitimate administrative reasons. By Affidavit, Defendant Griffo avers that on October 12, 2006, he was the Watch Commander at the Oneida County Jail and received a "verbal request from the unit officer Roger Burdick to transfer [Plaintiff] from Baker Left to Baker Right due to [Plaintiff's] behavior. I ordered Sergeant VanPelt to make the transfer after I received permission and verification from the Classification Officer." Griffo Aff. at 1-2 (Dkt. No. 44, Att. 4). In his answer to Plaintiff's Interrogatories, Defendant Griffo stated that Plaintiff was moved because (1) inmates on Plaintiff's keep separate list were housed on Baker Block Left and no such keep separate inmates were housed on Baker Block Right and (2) the unit officer requested the transfer "due to [Plaintiff's] behavior." Dkt. No. 44, Att. 12 at 1. Defendant Gondek states in an Affidavit that "during the October and November period prior to the incident of November 21, 2006, John Finch was the only 'keep separate' and he was housed on Baker Left." Gondek Aff. at 3 (Dkt. No. 44, Att. 6). Plaintiff has failed to submit any evidence to dispute the reasons provided for the transfer, but relies only upon his own conclusory statements that he was not moved per Officer Burdick's request "due to behavior and there is no documentation on file indicating so." Reply at 1 (Dkt. No. 47). Even if Plaintiff had proffered some evidence of retaliatory motivation for the transfer, Defendants have shown that they would have taken the same action against Plaintiff for a valid reason. Accordingly, the Court finds

that no reasonable fact-finder could conclude in Plaintiff's favor. Defendants are therefore entitled to summary judgment dismissing Plaintiff's retaliation claim.

### 7.    Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed *supra*, accepting all of Plaintiff's allegations as true, he has not shown that Defendants violated his constitutional rights.

Therefore, in the alternative, Defendants' cross-Motion is granted on this ground.

### B.    Plaintiff's Motion for Summary Judgment

Because the Court has concluded that Plaintiff's Amended Complaint should be dismissed in its entirety, Plaintiff's Motion for summary judgment is denied moot.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Defendants' cross-Motion for summary judgment (Dkt. No. 44) is **GRANTED**; and it is further

**ORDERED**, Plaintiff's Amended Complaint (Dkt. No. 34) is **DISMISSED** in its entirety; and it is further

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 40) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:        September 24, 2008
              Albany, New York

Lawrence E. Kahn
U.S. District Judge

27